IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TANYA ELLEN WELCH, | ) |
| Plaintiff, | ) |
| | ) NO. 3:22-cv-00796 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| FRANK BISIGNANO, Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court[1] is a Report and Recommendation (Doc. No. 23, "R&R") of the Magistrate Judge, wherein the Magistrate Judge recommends that this Court deny Plaintiff's motion for judgment on the record (Doc. No. 19, "Motion for Judgment") and affirm the decision of the Social Security Administration (SSA). Plaintiff filed objections to the R&R (Doc. No. 24, "Objections"), wherein she "asks the Court to reject the report and recommendation of the magistrate judge and remand this case under the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings." (Doc. No. 24 at 8). Defendant, the Commissioner of Social Security,[2] filed a response "oppos[ing] Plaintiff's Objections and . . . urg[ing] this Court to adopt the [R&R]

---

[1] Herein, "the Court" refers to the undersigned District Judge, as opposed to the Magistrate Judge who authored the R&R.

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, therefore, he should be substituted for Kilolo Kijakazi (and, for that matter, for "Social Security Administration," on the docket in PACER as the defendant) in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

in full" and affirm the decision of the SSA Administrative Law Judge (ALJ).[3] (Doc. No. 27, "Response"). Plaintiff thereafter filed a reply in support of the Objections. (Doc. No. 28, "Reply").

PROCEDURAL BACKGROUND

Neither party disputes the Magistrate Judge's recounting of the procedural background of this case at pages 1 through 4 of the R&R. Therefore, the Court adopts that recounting its entirety and includes it verbatim as it was set forth in the R&R (without block quoting, in order to promote readability), minus its captions and footnotes but with its citations and with one bracketed word added:[4]

Plaintiff has filed several applications for DIB, all of which have resulted in unfavorable decisions from the presiding ALJs. She filed an application on September 28, 2011, for which Administrative Law Judge ("ALJ") Greg Holsclaw issued an unfavorable decision on October 11, 2013. (Transcript of the Administrative Record (Docket No. 13) at 97–114.) She then filed another application on June 22, 2016, for which ALJ Angele Pietrangelo issued an unfavorable decision on May 22, 2018. (AR 120–39, 361–68.) In her decision, ALJ Pietrangelo adopted the RFC [findings] from Judge Holsclaw's decision because she found that Plaintiff's condition had not deteriorated. (AR 123.)

---

[3] Filings in this case refer to the underlying decision at issue variously as the decision of SSA and the decision of the ALJ; there is no material distinction between the two, as the decision of the ALJ amounts to the decision of SSA given that the Appeals Council declined to review it.

[4] The R&R cited to the Transcript of the Administrative Record (Doc. No. 13) by using the abbreviation "AR," followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.
  "RFC" stands for "residual functioning capacity," which means "the most [a social security claimant] can do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Accord Clifford v. Apfel*, 227 F.3d 863, 873 n. 7 (7th Cir.2000). Herein, the term "RFC finding" (or "RFC findings") refers to the determination of an ALJ as to what Plaintiff's residual functioning capacity was at the time(s) in question.

Plaintiff filed her most recent application, which is the subject of this appeal, on July 10, 2018, approximately seven weeks after ALJ Pietrangelo denied Plaintiff's prior claim. (AR 369–75.) In this application, Plaintiff asserted that, as of the alleged onset date of May 23, 2018, she was disabled and unable to work due to a broken vertebrae at L1, compressed vertebrae, degenerative disc disease, scoliosis, a pinched never [sic] on the left side, manic depression, bipolar disorder, anxiety, panic attacks, and migraines. (AR 141, 157, 159.) On March 12, 2020, Plaintiff appeared with counsel and testified at a hearing conducted by ALJ Michelle Thompson. (AR 77– 96.) On March 26, 2020, ALJ Thompson denied the claim. (AR 180–89.) On February 4, 2021, the Appeals Council granted Plaintiff's request for a review of ALJ Thompson's decision, vacated the decision, and remanded the matter for further proceedings. (AR 195–96.).

On remand, Plaintiff appeared with counsel and a vocational expert and testified at a hearing conducted by ALJ Frank Gregori on September 13, 2021. (AR 34–76.) On October 28, 2021, ALJ Gregori denied the claim. (AR 12–27.) On August 8, 2022, the Appeals Council denied Plaintiff's request for review of ALJ Gregori's decision, thereby making the ALJ's determination the final decision of the SSA. (AR 1–4.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

In his October 28, 2021, unfavorable decision, ALJ Gregori included the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.

2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of May 23, 2018 through her date last insured of December 31, 2018 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: a spinal disorder, degenerative joint disease, osteoporosis, obesity, a mood disorder, and an anxiety disorder. (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) that is limited to lifting and/or carrying no more than 20 pounds occasionally and no more than a total of 10 pounds frequently; standing and/or walking no more than a total of six hours during an eight-hour workday and for no more than 30 minutes at one time; and sitting for no more than a total of six hours out during an eight-hour workday and for no more than one hour at a time without interruption. The claimant is unlimited in pushing and pulling with the upper and lower extremities other than the weight limitations given for lifting and carrying. She can do no more than frequent balancing, stooping, or climbing of ramps or stairs, but cannot perform kneeling, crouching, crawling, or climbing ladders, ropes, or scaffolds. She must avoid all exposure to workplace hazards, such as operating moving machinery and working at unprotected heights. The claimant can understand, remember, carryout, and maintain adequate concentration, persistence, and pace with simple and low-level details tasks throughout an 8-hour workday with customary work breaks. She should have no more than occasional interaction with co-workers, supervisors, and the general public, and she can adapt to infrequent changes in the workplace.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 11, 1970 and was 49 years old, which is defined as a younger individual age 18-49, on her date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 23, 2018, the alleged onset date, through December 31, 2018, the date last insured (20 CFR 404.1520(g)).

(AR 18–27.)

## PERTINENT ASPECTS OF THE R&R, AND PLAINTIFF'S OBJECTIONS THERETO

As the R&R correctly noted, Plaintiff made three arguments[5] challenging ALJ Gregori's decision, which the R&R accurately quoted from the memorandum (Doc. No. 20) in support of the motion for judgment on the record as follows:

1. Remand is required because ALJ Gregori willfully violated Ms. Welch's constitutional rights by adopting the prior ALJ decisions, which were rendered when neither ALJ Holsclaw nor ALJ Pietrangelo had the legal authority to issue such a decision.

2. Remand is required because the ALJ erred in applying res judicata to the prior decisions of ALJ Holsclaw and ALJ Pietrangelo where there had been significant changes in the relevant law, regulations, and rulings since the date of these prior ALJ decisions.

3. Remand is required because ALJ Gregori failed to either include mental limitations he found credible in his residual functional capacity (RFC) finding or to explain why he was omitting these credible limitations.

(Doc. No. 23 at 7). Ultimately, the Magistrate Judge rejected all three arguments.

Notably, although only the second of these arguments is couched in terms of a complaint about ALJ Gregori (allegedly) affording res judicata effect to the prior ALJ decisions, the first of these arguments also amounts effectively to a complaint about ALJ Gregori (allegedly) affording res judicata effect to the prior ALJ decisions. In the Court's view, the first and second arguments differ only with respect to the *basis for claiming* that the (alleged) res judicata effect afforded to the prior ALJ decisions should not have been afforded to the prior ALJ decisions.

The Court herein will illuminate the Magistrate Judge's decision and reasoning with respect to these three arguments only to the extent necessary to resolve the Objections—meaning, for the reasons explained below, with respect only to the first of Plaintiff's three arguments.

---

[5] These are referred to within the R&R as "assertions of error". The Court will refer herein to the same as "arguments" or "assertions of error."

With respect to the first argument, the Magistrate Judge accurately recounted applicable legal background:

> In *Lucia* [*v. S.E.C.*, 585 U.S. 237, 138 S. Ct. 2044 (2018)], the Supreme Court held that the Securit[ies] and Exchange Commission's ALJs were "inferior officers" rather than employees and were, therefore, not subject to the Appointments Clause. 138 S. Ct. at 2055. Accordingly, those ALJs should have been appointed by [either] the President, a court of law, or a department head, which rendered their prior appointments defective [because they had instead been appointed by staff members of the Securities and Exchange Commission]. *Id.* at 2051. The Court held that the remedy for a violation of the Appointments Clause is a new hearing before a different and properly appointed official. *Id*. at 2055 ("To cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing to which Lucia is entitled."). In response to this decision, on July 16, 2018, the Acting Commissioner of the SSA "ratified the appointments of [the SSA's] ALJs and approved those appointments as her own." SSR 19–1p, 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019). In *Carr* [*v. Saul*, 593 U.S. 83, (2021)], which was decided several years after the ratification, the Court held that a claimant is not precluded from raising an Appointments Clause challenge for the first time in federal court even if the claimant did not raise the challenge earlier before the SSA. 141 S. Ct. at 1362.
>
> Although an Appointments Clause violation is typically remedied by "a new hearing before a property appointed official distinct from the previous ALJ," *Lucia*, 138 S. Ct. at 2055, the Supreme Court did not specify how that "new hearing" must be conducted. The Sixth Circuit, however, recently set forth guidance for assessing whether an agency has afforded a claimant a "new hearing" in accordance with *Lucia*. *See Calcutt v. FDIC*, 37 F.4th 293, 320–21 (6th Cir. 2022), *rev'd on other grounds*, 143 S. Ct. 1317 (2023); *Jones Bros., Inc. v. Sec'y of Lab., Mine Safety & Health Admin.*, 68 F.4th 289 (6th Cir. 2023).
>
> In *Calcutt*, the Sixth Circuit emphasized that agencies have wiggle room in shaping new proceedings that are sent back to them on remand. 37 F.4th at 320–21. In that case, the claimant – who had a first hearing before an FDIC ALJ in 2015 and then, following Lucia, had a second hearing before a different FDIC ALJ in 2019 – argued that the second hearing was in violation of *Lucia* because it did not "consist of an entirely new proceeding, where the new adjudicator starts from scratch and ignores the record from the prior proceeding." *Id.* at 320. The Sixth Circuit disagreed with the claimant's proposed "bright-line rule" because to "hold that all adjudications must start from zero after a judicial decision invalidating ALJ appointments would result in cumbersome, repetitive processes throughout the executive branch simply to produce findings and orders that would often be identical the second time around." *Id.* at 321. Rather, an "'independent evaluation of the merits' does not require an ALJ to ignore all past proceedings: Independent is not a synonym for ignorance." *Id.* (quoting *Intercollegiate Broad. Sys., Inc. v.*

*Copyright Royalty Bd.*, 796 F.3d. 111, 121–23 (D.C. Cir. 2015)). Accordingly, the Sixth Circuit focused its inquiry on whether the second ALJ's consideration of prior information from the record "showed sufficient continuing taint arising from the first proceeding to demonstrate that the second proceeding was not an independent, de novo decision." *Id.* (quoting *Intercollegiate Broad. Sys.*, 796 F.3d. at 124) (citing *Fed. Election Comm'n v. Legi-Tech, Inc.*, 75 F.3d 704, 708 n.5 (D.C. Cir. 1996)) (quotations omitted).

      The Sixth Court held that the new hearing required by *Lucia* "need not be from scratch; rather, the impact of the prior proceeding must be sufficiently muted that the new adjudicator can independently consider the merits." *Id.* at 322–23. An earlier ALJ's "general ability to shape the record" does not de facto invalidate a decision by a subsequent ALJ at a later proceeding. *Id.* at 322 (citing *Intercollegiate Broad. Sys.*, 796 F.3d at 124 (explaining that "not every possible kind of taint is fatal because, if it were, there would be no way to remedy an Appointments Clause violation"); *Legi-Tech*, 75 F.3d at 708–09 (accepting that past Appointments Clause violation will have some impact on later proceedings but refusing to restart administrative process)). Further, a subsequent proceeding is even more likely to be "independent" where the claimant is given an opportunity to submit additional evidence and specify alleged defects in the first proceeding. *Id.*

      In *Jones Bros., Inc*, the Sixth Circuit used the framework from Calcutt to analyze whether a subsequent administrative law judge with the Federal Mine Safety and Health Review Commission held a "fresh proceeding" even though she read the prior ALJ's opinion. 68 F.4th at 294–95, 302–03. The Sixth Circuit held that the appellant had not "demonstrated a sufficient 'continuing taint'" because the only concrete evidence it pointed to was that the subsequent ALJ read the previous ALJ's decision. *Id.* at 303. The Sixth Circuit reiterated its holding in *Calcutt* that an ALJ is not required to "ignore all past proceedings" and the "mere fact" that the ALJ read the prior decision is "not enough to require reversal." *Id.* (quoting *Calcutt*, 37 F. 4th at 321) (citing *Integrity Advance, LLC v. Consumer Fin. Prot. Bureau*, 48 F.4th 1161, 1171 (10th Cir. 2022) (finding that de novo review by a new ALJ of a previous hearing held before an unconstitutionally appointed ALJ constituted a sufficient "new hearing"); *Doolin Sec. Sav. Bank v. Off. of Thrift Supervision*, 139 F.3d 203, 213 (D.C. Cir. 1998) (finding that an acting agency director's affirmance of an ALJ decision, which was based on a Notice of Charges issued by a potentially unlawfully appointed former acting agency director, was sufficiently independent of the Notice)). The Sixth Circuit also held that "the mere fact that the ALJ came to conclusions that [appellant] disagrees with does not compel the conclusion that the alleged errors stemmed from bias." *Jones Bros., Inc*., 68 F.4th at 303.

(Doc. No. 23 at 9-12) (footnote omitted). Having set forth this pertinent legal background, the Magistrate Judge appropriately articulated the crux of Plaintiff's first assertion of error on the part of ALJ Gregori: "In dispute is whether ALJ Gregori's decision was tainted because he relied on

the final administrative decisions of ALJs Holsclaw and Pietrangelo, both of which were rendered before the Acting Commissioner's ratification of ALJ appointments on July 16, 2018." (*Id*. at 12). And on that question, the Magistrate Judge effectively answered in the negative, explaining in summary, "Following the guidance set forth by the Sixth Circuit, this [magistrate judge] finds that ALJ Gregori's adoption of the RFC [finding] that was first determined by ALJ Holsclaw in his October 2013 decision and later adopted by ALJ Pietrangelo in her May 2018 decision was not in violation of the Appointments Clause." *Id.*

Elucidating that basis for her opinion, the Magistrate Judge stated in pertinent part:

> The Appeals Council properly remanded Plaintiff's case to a different ALJ, who was not required to conduct a new hearing "from scratch." *Calcutt*, 37 F.4th at 322–23. Rather, ALJ Gregori's consideration of prior information from the record, along with new information that Plaintiff submitted, demonstrates "that the second proceeding was an independent, de novo decision." *Id.* at 321. For example, when determining Plaintiff's RFC and whether her allegations regarding her ability to work were supported by the record, ALJ Gregori discussed medical records from July 2018 and September 2018. (AR 23.) Neither ALJ Holsclaw nor ALJ Pietrangelo could have reviewed these medical records because they were not in existence when those ALJs made their decisions in October 2013 and May 2018, respectively. In addition, ALJ Gregori did not indiscriminately adopt the prior ALJs' RFC findings; instead, he modified Plaintiff's lifting and carrying restrictions, reduced her range of exertional work, and limited her exposure to hazards. (AR 24.)
>
> The fact that ALJ Gregori held a subsequent, independent hearing where Plaintiff was represented by counsel and had "an opportunity to submit additional evidence and specify alleged defects in the first proceeding" is further evidence that ALJ Gregori made an "independent" decision that remedied any Appointments Clause violation by ALJ Holsclaw or ALJ Pietrangelo. *Id.* at 322. ALJ Gregori was required to "independently consider the merits" rather than "ignore[] all past proceedings." *Id.* at 321. Indeed, pursuant to binding Sixth Circuit law and guidance from the Social Security Administration, ALJ Gregori was required to consider those past proceedings within certain parameters, which he did. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997); SSAR 98-4(6), 63 Fed. Reg. 29771 (Jun. 1, 1998). In sum, this Court finds that ALJ Gregori conducted "fresh proceedings" as required by Lucia and as defined by the Sixth Circuit in *Calcutt* and *Jones Bros., Inc.*

Finally, the Court is persuaded by the SSA's argument that Plaintiff is attempting to indirectly attack ALJ Pietrangelo's May 2018 decision by arguing that ALJ Gregori's October 2021 decision is invalid under the Appointments Clause. Although this Court is not bound by the decision of a district court in another circuit, this Court finds the reasoning of the United States District Court for the Eastern District of Virginia in *Lisa W.* to be well reasoned and instructive. 2021 WL 6101825. In *Lisa W.*, the court was faced with a similar set of circumstances: the plaintiff argued that a subsequent ALJ's 2020 decision was impermissible under the Appointments Clause because the subsequent ALJ relied upon the prior 2017 decision of a prior ALJ who was not constitutionally appointed. 2021 WL 6101825 at *2. The court held that the plaintiff could not "collaterally attack" the earlier 2017 decision because the plaintiff did not directly appeal that decision in a timely manner:

> Petitioner has asserted that this is "Plaintiff's first challenge to the prior ALJ decision in Federal Court, as *Lucia* had not been decided at the time of the prior decision." . . . However, Plaintiff is not challenging the 2017 ALJ Decision. Plaintiff chose not to seek judicial review of the 2017 ALJ Decision, which made that decision final and binding. *See* 20 C.F.R. §§ 404.955(b); 404.987; 416.1455(b); 416.1487. All "findings of fact" listed in the 2017 ALJ Decision are also final. 42 U.S.C. § 405(h). Furthermore, because *Carr* only excuses exhaustion within the same case, not generally for all Appointment Clause challenges, Plaintiff is not excused from failing to appeal the 2017 ALJ Decision directly. *See Carr*, 141 S. Ct. at 1356.

*Id.* at *11. Here, just like the plaintiff in *Lisa W.*, Plaintiff did not seek judicial review of ALJ Pietrangelo's May 2018 decision. Accordingly, that decision is final and binding. *See* 20 C.F.R. §§ 404.955(b); 404.987; 416.1455(b); 416.1487. Plaintiff has not presented the Court with any argument to the contrary. For these reasons, the Court rejects Plaintiff's first assertion of error.

(Doc. No. 23 at 12-14) (footnote omitted).

Plaintiff raises multiple objections to the R&R. Although she is not as clear as she might have been regarding the nature of her first objection, it is apparent that in substance it is an objection to the Magistrate Judge's above-quoted conclusion (and corresponding reasoning) that "ALJ Gregori made an 'independent' decision that remedied any Appointments Clause violation by ALJ Holsclaw or ALJ Pietrangelo" rather than "indiscriminately adopt the prior ALJs' RFC findings[.]" (Doc. No. 23 at 13).

## LEGAL STANDARDS REGARDING REVIEW OF A REPORT AND RECOMMENDATION

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. *See* 28 U.S.C. § 636(b)(1)(C). Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id.*

Below, the Court conducts to the extent necessary a *de novo* analysis of portions of the R&R challenged by the Objections.[6] As it turns out, the Court can and does begin and end with an analysis of the portion of the R&R challenged by Plaintiff's above-described first objection.

## LEGAL STANDARDS REGARDING REVIEW OF DECISIONS OF AN ALJ

The ultimate questions before a district court in reviewing (as the Court does here, *de novo*, in light of the Objections) a decision by an ALJ are whether the ALJ's determination was supported by substantial evidence and whether the ALJ applied the correct legal standards. *Shelton v. Saul*, No. 2:18-cv-00093, 2020 WL 1284628, at *2 (M.D. Tenn. Mar. 18, 2020) (citing 42 U.S.C. § 405(g)). If the answer to either question is no, then reversal of the ALJ's decision and (usually and in the present case)[7] remand to the Commissioner under the fourth sentence of 42 U.S.C. §

---

[6] The Court generally uses the term "Objections" to refer to the document filed by Plaintiff purportedly to object to the R&R and uses the term "objection" or "objections" to refer to particular objections set forth in the Objections.

[7] Under limited circumstances, reversal properly can result in the district court immediately (and without remand to the Commissioner) awarding benefits. That is, if the case contains an adequate record, "the [SSA's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). But benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The instant case is not one wherein reversal should result in an immediate award of benefits; instead, reversal here should be accompanied by *remand*. Plaintiff acknowledges as

405(g)[8]—what the Court herein will generally call "reversal and remand"—is required. The court conducts its review under a "highly deferential" substantial-evidence standard. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 838 (M.D. Tenn. 2019). The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).[9]

"Where a claimant alleges that the agency applied the incorrect legal standard, [the court] review[s] the legal criteria de novo and may reverse even if substantial evidence otherwise supported the decision." *Gooden v. Comm'r of Soc. Sec.*, No. 23-3927, 2024 WL 2830817, at *3 (6th Cir. June 4, 2024). And if an ALJ "*actually applied* incorrect res judicata principles," then

---

much, requesting that the Court and "remand this case under the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings." (Doc. No. 24 at 8).

[8] That sentence provides: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). A remand is authorized specifically under this sentence in particular when the district court reverses the underlying decision of the ALJ. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

[9] As indicated below, the Court resolves the Objections by answering the question of whether the ALJ applied the correct legal standards, and not the question of whether the ALJ's determination was supported by substantial evidence. Nevertheless, the Court directly below sets forth applicable principles concerning the former question.

Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficient evidence" to support the agency's factual determinations. *Biestek*, 139 S. Ct. at 1154. And, whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. *Id.* Substantial evidence is "more than a mere scintilla" and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*; *Shelton*, 2020 WL 1284628, at *2; *see also Rottman v. Comm'r of Soc. Sec.*, No. 19-2205, slip op. at 3 (6th Cir. June 19, 2020). The standard amounts to "less than a preponderance of the evidence," and is met even if the record could reasonably support the opposite conclusion. *Brown v. Comm'r of Soc. Sec.*, 814 F. App'x 92, 95 (6th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Jones*, 392 F. Supp. 3d at 838 (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). Additionally, even if the ALJ makes a factual error while reaching her conclusion, the reviewing court will deem the error harmless and uphold the ALJ's decision "[s]o long as there remains substantial evidence supporting the ALJ's conclusions" and the error does not negate the validity of the ALJ's ultimate conclusion. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

remand to the Commissioner is required. *Id.* at *4. As *Gooden* makes clear, if an ALJ treats a prior ALJ decision as binding, such treatment is an application of "res judicata principles." *Id.* at 4. It follows then (as is particularly relevant in the instant case) that if an ALJ incorrectly treats a prior ALJ decision as binding—i.e., actually treats a prior ALJ decision as binding when the ALJ should not have done so—then remand is required. The (only) question here is whether ALJ Gregori actually treated the prior ALJs' decisions regarding RFC as binding; there appears to be no dispute that if ALJ Gregori did so, that would have been in violation of the Appointments Clause and thus legally incorrect.

The Court above has described not only the Magistrate Judge's conclusions as to which first objection has been made, but also the rationale for those findings. Describing such conclusions is helpful for placing into context the issues raised for the Court via Plaintiff's objections. But the Court notes that—as is generally under-appreciated—under 28 U.S.C. § 636(b), its task is not actually to critique, or to directly approve or disapprove, the rationale of the Magistrate Judge; and its task certainly is not to decide whether the Magistrate Judge's rationale was reasonable. Rather, its task is to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). And so that is what the Court will do below, providing a *de novo* review of the issue that the Magistrate Judge decided against Plaintiff without dwelling on what the Magistrate Judge had to say about Plaintiff's arguments and without deferring to the Magistrate Judge's decision in any way—and also without purporting to make some direct pronouncement whether the Magistrate Judge's decision was "wrong."

ANALYSIS

As noted above, Plaintiff objects to the R&R's conclusion that with respect to Plaintiff's RFC, ALJ Gregori made an independent decision, rather than relied "indiscriminately," on the prior ALJs' RFC finding.[10] Plaintiff argues that rather than make "an independent, de novo decision" as to Plaintiffs' RFC, *Calcutt*, 37 F.4th at 321 (quoting *Intercollegiate Broad. Sys.*, 796 F.3d at 124), ALJ Gregori instead gave res judicata[11] effect to the prior ALJs' decisions.[12]

---

[10] Without meaning to quibble with the Magistrate Judge's terminology or to suggest that there was something inappropriate about her terminology, the Court notes that it is unclear what she meant by "indiscriminately" and whether she perceived a meaningful distinction between reliance this is done "indiscriminately" and reliance that is not done "indiscriminately. In part for this reason, the Court will forgo the use of the modifier "indiscriminate[ ]") in connection with "reliance."

[11] The Court notes that although sometimes the term "res judicata" is used to refer solely to so-called claim preclusion, at other times it is used to encompass both claim preclusion and issue preclusion (also known as collateral estoppel). As the Supreme Court has explained:

> The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of "res judicata." Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. . . . .
>
> This Court on more than one occasion has used the term "res judicata" in a narrow sense, so as to exclude issue preclusion or collateral estoppel.

*See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) (quoted in *In re Fordu*, 201 F.3d 693, 703 (6th Cir. 1999)).
  It is apparent that the res judicata effect of ALJ Gregori's decision is the effect of collateral estoppel, i.e., issue preclusion—namely, the precluding of the relitigation of the issue of Plaintiff's RFC.

[12] In the Court's view, the question of whether ALJ Gregori failed to make "an independent, de novo decision" regarding Plaintiff's RFC, *Calcutt*, 37 F.4th at 320–21—as required by a part of *Calcutt* that is precedential for this Court despite *Calcutt* being reversed on other grounds—as effectively the same as whether ALG Gregori afforded res judicata effect to the prior ALJs' decisions concerning Plaintiff's RFC.

The Magistrate Judge plainly had some things upon which to hang her metaphorically hat. She accurately cited some things in ALJ Gregori's decision that plainly indicated that he was making his own decision concerning facts affecting Plaintiff's RFC as it stood at the time of ALJ Gregori's decision. However, the Court finds that (i) on a crucial aspect of the RFC determination, ALG Gregori did not make an independent determination, but rather treated the prior ALJs' decisions as binding; and (ii) his treatment of the prior ALJs' FRC findings as binding with respect to this aspect means that (even though ALJ Gregori made his own independent decision on *other* aspects of the issue of Plaintiffs' RFC), ALJ Gregori's decision on Plaintiff's RFC was not "an independent, de novo decision" as required by *Calcutt*. 37 F.4th at 320–21. Regarding the first of these two points, there can be no question that ALJ Gregori treated the ALJs' prior decisions as binding with respect to the issue of *Plaintiffs' RFC at the time of those decisions*. This is clear from the following passage in ALJ Gregori's decision:

> The record also reveals that the claimant has filed two prior applications, which resulted in determinations by other Administrative Law Judges finding that the claimant was not disabled. The first decision was issued on October 11, 2013. The most recent decision, which adopted the residual functional capacity from the previous hearing, was issued on May 22, 2018. Therefore, the undersigned must apply the principles set forth in Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997) (see also Social Security Ruling 98-4(6)) and Dennard v. Secretary of Health and Human Services, 907 F.2d 598 (6th Cir. 1990) (see also Social Security Acquiescence Ruling 98-3 (6)). This precedence holds that, absent evidence of improvement or deterioration in a claimant's condition, a subsequent Administrative Law Judge is bound by the findings of a previous Administrative Law Judge. The undersigned finds that the residual functional capacity of the prior hearing decisions is essentially adopted as the evidence does not support any significant changes to the residual functional capacity and certainly does not document any worsening of symptoms from May 23, 2018 to the date last insured of December 31, 2018. The new and relevant evidence in the record pertaining to the period at issue is quite limited and supports that the claimant was able to perform a reduced range of light exertional work with moderate mental limitations.

(Doc. No. 13 at 21)[13] (citations to exhibits omitted). The Court is compelled to read this as saying that ALJ Gregori proceeded as if he was *presumptively or at least conditionally* bound by the prior ALJs' decisions regarding Plaintiffs' RFC, i.e., bound by those decisions absent special circumstances—namely, absent the existence of "evidence of improvement or deterioration in a claimant's condition." *Id.* And finding that those special circumstances were not present—because "the evidence does not support any significant changes to the residual functional capacity and certainly does not document any worsening of symptoms from May 23, 2018 to the date last insured of December 31, 2018"—ALJ Gregori ultimately did afford binding effect to the prior ALJs' decisions.

As noted, it is true that in determining whether those special circumstances were present, ALJ Gregori did exercise independent judgment. He could not possibly have treated as binding any decision of the prior ALJs on that issue, because the ALJs could not possibly have made any decision on that issue (because the issue is what happened to Plaintiff's RFC *after* the ALJs had made their decisions). And relatedly, as the Magistrate Judge correctly noted, ALJ Gregori "discussed medical records from July 2018 and September 2018[,] which "[n]either ALJ Holsclaw nor ALJ Pietrangelo could have reviewed . . . because they were not in existence when those ALJs made their decisions in October 2013 and May 2018, respectively." (Doc. No. 23 at 13).

But in the Court's view, none of this changes the fact that ALJ treated the prior ALJs' findings as presumptively binding. What this does instead is merely highlight that ALJ Gregori made a decision (entirely independently, it is true) that in ALJ's Gregori's mind made the prior

---

[13] When citing to a page in a document filed by one of the parties or to the decision authored by ALJ Gregori, the Court endeavors to cite to the page number ("Page __ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the/filer or author of the document.

ALJs' absolutely binding; that is, by finding an absence of "evidence of improvement or deterioration in a claimant's condition" since the time of the prior ALJs' decisions he removed what in his mind was the sole condition to his being required to treat as binding the prior ALJs' RFC findings. So in the Court's view, ALJ' Gregori's determination that there was an absence of such evidence—even though itself independent—does not show that his ultimate decision regarding Plaintiffs' RFC was independent and *de novo*; that determination, instead, caused ALJ Gregori to default to the prior ALJs' RFC findings under his belief that (with the aforementioned condition being removed) he was required to treat the ALJs' RFC findings as binding.

In summary, although ALJ Gregori made an independent determination as to one part of the RFC analysis, namely whether there was "evidence of improvement or deterioration in a claimant's condition" since the time of the prior ALJs' decisions, his determination on that issue led him to default to the prior ALJs' RFC findings. That is, ALJ Gregori did treat the prior ALJs' decision is binding—at first only presumptively (or conditionally), but then (once the condition was removed) definitely. And in so doing, he eschewed making an independent and *de novo* determination of Plaintiff's RFC.

The Magistrate Judge was right to emphasize in effect that ALJ Gregori was not required to conduct his hearing "from scratch" with respect to the issue of Plaintiff's RFC (and with respect to any other issue, for that matter). But in the Court's view, in the final analysis, that does not help Defendant here. The Sixth Circuit in *Calcutt* was clear that although the ALJ need not conduct the hearing "from scratch"—whatever that means[14]—"the impact [on the present hearing] of the prior proceeding must be sufficiently muted that the new adjudicator can independently consider the

---

[14] For some hearings, it may be perfectly clear that the hearing was held in a manner that would fit most everyone's conception of "from scratch." But for other hearings, it may be less clear that the expression "from scratch" fits. In short, the precise contours of the term "from scratch" (as used by the Sixth Circuit in *Calcutt*) seems somewhat inscrutable to the Court.

merits." 37 F.4th at 322–23. Where (as here) the ALJ (independently) finds non-satisfaction of the sole condition to *not* treating as binding a particular decision made in the prior proceeding(s), and therefore concludes that he is bound by that decision (here, regarding Plaintiff's RFC), the Court cannot find that ultimately either the impact of the prior decision was "sufficiently muted" for the ALJ to independently consider the merits concerning that decision.

For all of these reasons, the Court respectfully comes out differently on this issue than did the Magistrate Judge. The Court notes that this might not have been the case if its review was deferential rather than *de novo*. If the question for the Court was, for example, whether the Magistrate Judge had a substantial basis for her conclusion, the Court likely would have adopted the Magistrate Judge's conclusion and resulting recommendation; reasonable minds could disagree as to whether the Magistrate Judge's conclusion was correct and the Court's contrary view incorrect. But unfortunately for Defendant, that is not the question. The law (for better or for worse) is very clear: on review of portions of a report and recommendation to which an objection has been made, a magistrate judge's conclusion is reviewed entirely *de novo* and thus is entitled to no deference. And so the Court has to call it like it sees it, and it sees it somewhat differently than did the learned Magistrate Judge, believes that in the final analysis ALJ Gregori is properly perceived as having treated the prior ALJs' decisions as binding.

The Court notes that in its view, its conclusion amounts to a conclusion that the ALJ improperly applied what qualify as "res judicata principles" for purposes of the above-stated rule: that improper application of res judicata principles is grounds for reversal and remand. But it also amounts to a conclusion that under *Calcutt*, ALJ Gregori's decision resulted in a violation of the Appointments Clause. This means that the appropriate remedy is a remand for a new hearing before

a different ALJ. *See Lucia*, 585 U.S. at 151. Accordingly, the Court will order such, without need to consider Plaintiff's other objections.

## CONCLUSION

For the reasons discussed herein, Plaintiff's Objections (Doc. No. 24) are SUSTAINED to the extent and for the reasons set forth herein. Accordingly, the Court declines to adopt the recommendation of the Magistrate Judge set forth in the R&R. Instead, on *de novo* review, the Motion for Judgment (Doc. No. 19) is **granted**, the decision of the Commissioner is reversed, and this matter is remanded to the Commissioner under the fourth sentence of 42 U.S.C. § 405(g), for reassignment to an ALJ other than ALJ Holsclaw, ALJ Pietrangelo, or AALJ Gregori and further administrative proceedings consistent with this opinion

For the reason explained in a footnote above, the Clerk **shall** change the name of the defendant on the docket to "Frank Bisignano, Commissioner of Social Security."

The Clerk is directed enter judgment under Rule 58 of the Federal Rules of Civil Procedure and close the file.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE